ENVIRONMENTAL PROTECTION SERVICES, INC., Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Michael O. Leavitt, in his official capacity as Administrator, United States Environmental Protection Agency, Defendants.

No. CIV.A. 5:03CV230.

United States District Court, N.D. West Virginia.

March 23, 2005.

Edward L. Kropp, Lindsey K. Griffith, Jackson Kelly, PLLC, Charleston, WV; Larry W. Blalock, Jackson & Kelly, Wheeling, WV; and Michael J. Halaiko, Miles & Stockbridge, PC, Baltimore, MD, for Plaintiff.

Helen Campbell Altmeyer, U.S. Attorney's Office, Wheeling, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STAMP, District Judge.

### I. *Procedural History*

On October 3, 2003, the plaintiff, Environmental Protection Services, Inc. ("EPS"), filed a complaint in this Court seeking declaratory relief. The complaint alleges that the defendants, United States Environmental Protection Agency ("EPA"), and Michael O. Leavitt, in his official capacity as Administrator of the EPA, acted unlawfully in withholding records requested by the plaintiff through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2004). In addition, the complaint seeks a preliminary and final injunction enjoining the defendants from withholding these records. On November 6, 2003, the defendants filed a motion to dismiss or, in the alternative, to effect proper service. The plaintiff responded indicating that it had subsequently provided proper service, and this Court denied the motion as moot on December 10, 2003.

The parties filed *Vaughn*[1] indices on May 5, 2004 and May 13, 2004. On May 10, 2004, the plaintiff filed a motion for an evidentiary hearing. On May 17, 2004, the defendants filed a memorandum in opposition to the plaintiff's motion for an evidentiary hearing along with a motion for protective order. On May 27, 2004, the defendants filed a motion for emergency stay of the agreed order vacating the first order and notice, to which the plaintiff responded in opposition. On June 7, 2004, this Court entered an order denying the defendants' motion for emergency stay of the first order and notice and scheduling order, denying as moot the defendants' motion for protective order, and denying without prejudice the plaintiff's motion for an evidentiary hearing.

On June 17, 2004, the plaintiff filed a second motion for an evidentiary hearing/discovery, to which the defendants responded in opposition. This Court denied the plaintiff's motion on August 23, 2004 and reset the deadlines for dispositive motion responses.

On June 4, 2004, the defendants filed a motion for summary judgment and a motion for leave to file a memorandum in excess of the page limit. On June 23, 2004, this Court granted the defendants' motion to file a memorandum in excess of the page limit and filed the defendants' supporting memorandum. The plaintiff later responded to the defendants' motion, and the defendants replied.

Now before the Court is the defendants' motion for summary judgment. After consideration of the applicable law, the *Vaughn* indices and supporting declarations, the briefs submitted, and the materials submitted in support of those briefs, this Court finds that the defendants' motion for summary judgment should be granted.

---

**1.** In *Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973), the court stated that assuring a proper justification by the governmental agency "could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document."

## II. *Facts*

Plaintiff EPS is a West Virginia corporation with its principal place of business in West Virginia. The plaintiff operates a PCB electrical equipment waste disposal facility.

In its complaint, the plaintiff alleges that the defendants unlawfully failed to comply with the following two FOIA requests submitted by the plaintiff:

(1) FOIA request of October 2, 2002 submitted to EPA, Region III;

(2) FOIA request of September 4, 2002 submitted to EPA, Region II.

The plaintiff seeks a declaratory judgment from this Court requiring that the defendants comply with the plaintiff's FOIA requests and stating that the defendants have acted unlawfully in denying or otherwise failing to adequately respond to the plaintiff's FOIA requests. The plaintiff also seeks a preliminary and final injunction enjoining the defendants from acting unlawfully in withholding the requested records in violation of FOIA. Finally, the plaintiff seeks an award of costs and attorney's fees.

According to the plaintiff, the documents it seeks "are of great relevance to the public generally" because "they indicate a pattern or practice of holding regulated parties in different regions of the EPA to different standards, despite the fact that the PCB program, as a federal program, is intended to be applied uniformly nationwide." Compl. ¶ 28.

## III. *Applicable Law*

### A. *Summary Judgment*

Freedom of Information Act cases are generally resolved on summary judgment. *Wickwire Gavin, P.C. v. United States Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.1991)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

However, as the United States Supreme Court noted in *Anderson*, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505; *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950))).

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *See Oksanen v. Page Mem'l Hosp.*, 912 F.2d 73, 78 (4th Cir. 1990). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

B. *Freedom of Information Act*

■ "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). The government agency has the burden of establishing the adequacy of its search for the requested documents. *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994). The FOIA also places the burden of justifying nondisclosure on the government agency. 5 U.S.C. § 552(a)(4)(B). Thus, the government agency has the burden to demonstrate that any document withheld falls within a stated exemption. *See* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action [of withholding a record under a stated exemption]"). Moreover, the FOIA exemption must be narrowly construed in favor of disclosure. *Wickwire Gavin*, 356 F.3d at 591. Accordingly, FOIA requires that "any reasonable segregable portion of the record shall be provided ... after deletion of the portions which are exempt ...." 5 U.S.C. § 552(b).

■ Subsection 552(b) delineates nine exemptions to the disclosure requirement. The government agency's burden of proving that an exemption applies may be met through affidavits which must be relatively detailed, nonconclusory and submitted in good faith. *See Simmons v. United States Dep't of Justice*, 796 F.2d 709, 711 (4th Cir.1986). The Fourth Circuit has stated that:

> If the government fairly describes the contents of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Spannaus v. United States Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir.1987) (citing *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir.1980)).

IV. *Discussion*

The EPA asserts that it has conducted an adequate search and provided all responses necessary pursuant to FOIA. Further, it claims that the plaintiff has been provided with indices documenting the legal reasons why any documents have been withheld pursuant to FOIA exemptions. In addition, the EPA has submitted declarations from several individuals which document the scope of the EPA's search and its legal grounds for the withholding of documents.

In response, the plaintiff claims that: (1) the EPA continues to improperly withhold, pursuant to FOIA Exemptions 7(C), 7(D), and 5, redacted final criminal investigative reports and original handwritten notes of the EPA criminal investigator that are related to the closed investigation of G & S Technologies, Inc. ("G & S"); (2) the EPA

is improperly withholding copies of unspecified records that G & S representatives have obtained from a public docket; and (3) the EPA has failed to perform an adequate search for records in response to its September 4, 2002 FOIA request.

## A. *Adequacy of Search*

The EPA claims that the declarations of EPA employees, William C. Early, James J. Burke, Brion T. Cook, Ellen C. Stough, and Ann Finnegan, demonstrate the adequacy of .the EPA's search as to the two FOIA requests that are the subject of plaintiff's complaint. The plaintiff, however, argues that the EPA's search was inadequate because it did not include a search for responsive documents in the possession of the majority of individuals identified specifically in its FOIA request. The plaintiff asserts that "[a] good faith search in response to the EPS FOIA request required the EPA to *at least* ask all of those individuals named in the FOIA whether they had any responsive documents in their possession." Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 17.

In considering the adequacy of a search under FOIA, "the relevant question is not whether every single potentially responsive document has been unearthed ... but whether the agency has demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.' " *Ethyl Corp. v. U.S. EPA,* 25 F.3d 1241, 1247 (4th Cir.1994) (citations omitted)(quoting *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984)). In this case, the Early, Burke, Cook, Stough, and Finnegan declarations demonstrate the adequacy of the EPA's search in locating documents that were responsive to the two FOIA requests.

### 1. *Region III Request*

The plaintiff's Region III request, filed on October 2, 2002, contained forty-four requests for information. The EPA claims that it undertook a two-phase search for these documents. According to William C. Early, Regional Counsel for Region III, Cheryl Jamieson coordinated the search for responsive documents in the Office of Regional Counsel and in the other offices in Region III. Def.'s Mot. Summ. J., Ex. A, ¶ 4 (Declaration of William C. Early). She first initiated a search of the relevant documents within the offices of Region III to respond to paragraphs 1–34 and 38–44, asking persons in Region III who were "reasonably expected to have responsive records." *Id.* At the same time, the employees of the Waste and Chemical Management Division also conducted a similar search with respect to the plaintiff's request. Def.'s Mot. Summ. J., Ex. B, ¶¶ 1–7 (Declaration of James J. Burke). According to James J. Burke, Director of the Waste and Chemical Management Division, Tad Radzinski coordinated the general search in that division. *Id.*

These searches resulted in 448 pages of labeled records responsive to plaintiff's request. Def.'s Mot. Summ. J., Ex. A, ¶ 6; Ex. B, ¶ 6. Employees later determined that the initial search did not compass certain language included in paragraphs 35–37. *Id.* They undertook an additional search and identified 3,529 more documents which were labeled and reviewed and turned over to the plaintiff. Def.'s Mot. Summ. J., Ex. B, ¶ 7.

After considering the record, this Court finds that the declarations of EPA employees are sufficiently detailed to show that the EPA conducted an adequate search responsive to the Region III request. The Region III search, while initially flawed, was reasonable under the circumstances and the employees remedied the preliminary deficiencies. Consequently, the plaintiff's challenge to the

adequacy of the Region III search is without merit.

## 2. *Region II Request*

The plaintiff's September 4, 2002 submission to EPA Region II presented twenty-six requests for information. Ann Finnegan, a Life Scientist employed by Region II's Division of Enforcement and Compliance Assistance, Pesticides and Toxic Substances Branch, was charged with responding to the plaintiff's requests. *See* Def.'s Mot. Summ. J., Ex. E, ¶ 3 (Declaration of Ann Finnegan). She searched only for information that was located in the files of that particular branch, mistakenly assuming that identical requests were sent to other parts of the agency. *Id.* ¶ 5. After she compiled the information from that branch, Kenneth Stoller, Chief of the Pesticides and Toxic Substances Branch, wrote a letter to the plaintiff explaining that all responsive documents were being released, and that there were no responsive documents related to certain requests. *Id.* ¶ 6. The responsive documents were attached to that letter. *Id.*

The plaintiff appealed Region II's FOIA response. Upon review, the EPA discovered Ms. Finnegan's error and conducted additional searches for documents responsive to the plaintiff's request in the Criminal Investigative Division Headquarters, *see* Def.'s Mot. Summ. J., Ex. D, ¶¶ 5–6 (Declaration of Ellen C. Stough), at the Region II offices, and at the National Program Chemicals Division at Headquarters, *see* Def.'s Mot. Summ. J., Ex. C, ¶¶ 2–3 (Declaration of Brian T. Cook).

At the Criminal Investigative Division Headquarters, the plaintiff's request was forwarded to Isabelle Ward, a Paralegal/Information Management Specialist. According to the declaration of Ellen C. Stough, Acting Deputy Office Director, Ms. Ward conducted a search for responsive records and found that "[t]he documents located as part of this search included final investigatory reports related to a closed investigation of G & S Technologies, Inc. Handwritten interview notes related to the investigation also were provided by David Dillon, Special Agent, Region 2." Def.'s Mot. Summ. J., Ex. D, ¶¶ 5–6 (Declaration of Ellen C. Stough). Ms. Stough states that these documents were forwarded to the Office of General Counsel with recommended redactions in February 2004. *Id.* ¶ 6.

Again, this Court finds that the declarations of EPA employees were reasonably detailed as to show that the EPA conducted an adequate search responsive to the plaintiff's Region II FOIA request. While the EPA's initial search was flawed, it responded to the plaintiff's appeal and remedied the error. Moreover, it provided a substantial number of documents in response to the plaintiff's request. Consequently, this Court finds that no genuine issue of material fact remains with respect to the adequacy of the EPA's searches in this case.

## B. *Exemptions Claimed*

### 1. *Internal Matters, 5 U.S.C. § 552(b)(2)*

■ Title 5, United States Code, Section 552(b)(2) ("Exemption 2") protects matters that are "related solely to the internal personnel rules and practices of an agency." *Id.* Exemption 2 is not only intended to "screen out illegitimate public inquiries into the functioning of an agency," but "also serves to relieve the agency from the administrative burden of processing FOIA requests when internal matters are not likely to be the subject of public interest." *Martin v. Lauer,* 686 F.2d 24, 34 (D.C.Cir.1982).

The EPA has asserted Exemption 2 with respect to Criminal Investigation Division tracking numbers on documents

identified as Bates Label Nos. HQ CID # 1–51. According to Ellen C. Stough, these documents relate to a closed investigation of G & S Technologies, Inc. Def.'s Mot. Summ. J., Ex. D, ¶ 6 (Declaration of Ellen C. Stough).

■ The plaintiff did not challenge the EPA's assertion of Exemption 2 in its response, and this Court finds that its application is appropriate. Tracking numbers are the sort of "routine matter" of "merely internal significance" to which this exemption applies. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 370, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977). Consequently, no genuine issue of material fact exists with respect to this issue.

 2. *Deliberative Process, Attorney Work–Product Privilege and Attorney–Client Privilege, 5 U.S.C. § 552(b)(5)*

Title 5, United States Code, Section 552(b)(5) ("Exemption 5") exempts from production "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

The EPA contends that the documents it is withholding pursuant to Exemption 5 "consist exclusively of internal communications within the EPA." Defs.' Mot. Summ. J. at 14. This Court will address each of the applicable provisions of Exemption 5 in turn.

 a. *Deliberative Process Privilege*

■ The deliberative process privilege "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, 'but for the matters they considered before making up their minds.'" *City of Virginia Beach v. United States Dep't of Commerce*, 995 F.2d 1247, 1252–53 (4th Cir.1993) (quoting *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc), *overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C.Cir.1981)(en banc)).

■ The government agency, which has the burden of showing that the exemption applies, must show that in " 'the context in which the materials are used,' the documents are both predecisional and deliberative." *City of Virginia Beach*, 995 F.2d at 1253 (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C.Cir.1988)(en banc)). To meet this burden, the government is not required to identify a specific decision connected to the prepared document. *City of Virginia Beach*, 995 F.2d at 1253. As the Fourth Circuit has pointed out:

 Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process ... the line between predecisional documents and postdecisional documents may not always be a bright one.

*Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 n.n. 18–19 (1975)).

In this case, the EPA asserts that the deliberative process privilege is applicable to certain documents, or portions of documents, relevant to the plaintiff's FOIA request. With respect to the plaintiff's Region III request, the EPA asserts the privilege with respect to the documents with Bates Label Nos. EPS 864, EPS P3 1–2, 5–8, 11, 13, 15–17, 20–21, 32–33, 35–61, 66–76, 180–341, 346–427, 440–446, 448–609, 611–621, 703–707, 719–720, 790–954.

With respect to the plaintiff's Region II request, the EPA asserts the privilege with respect to the documents with Bates Label Nos. CID R2 01–56. The EPA claims that these documents are predecisional and are "part of the process through which the Agency has been deciding enforcement and compliance issues related to EPS's PCB destruction and disposal processes." Defs.' Mot. Summ. J. at 16. In addition, the EPA claims that these documents "consist of analyses and opinions on legal and policy matters that contributed to EPA's final decision." *Id.* Finally, the EPA claims that its "decision-making processes in the underlying enforcement action against EPS would be impaired by a release of predecisional materials" and that its future decision-making processes also would be chilled. *Id.* at 15–16.

In response, the plaintiff contends that documents such as the handwritten notes of the investigator, David Dillon ("Dillon"), are not subject to the deliberative process exemption because they contain only "factual data" and "do not represent any proposed actions nor ideas and expression of opinions within the agency." Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 7. The plaintiff asserts that Ms. Stough's declaration in support of withholding these documents is in direct contradiction to the author's own testimony regarding the notes at issue.

■■■ This Court finds that the EPA has satisfied the two requirements of the deliberate process test. First, the withheld documents and the withheld portions of certain documents are predecisional because they were prepared in the context of deciding PCB enforcement and compliance issues related to the plaintiff. Second, the withheld materials are deliberative because they concern analyses and opinions on legal and policy matters that contributed to the EPA's final decision.

This Court is not persuaded by the plaintiff's assertion that Dillon's notes are merely factual in nature. First of all, Dillon admits that his activities include "interviewing, *assessing the information,* reviewing documentations, requesting documentation." Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. 1, at 59. Moreover, this Court is satisfied that Dillon was sufficiently briefed regarding the nature of the investigation prior to and during the course of his involvement to make his questioning a selective recording of information particularly pertinent to the EPA's investigation. The notes, therefore, "contain factual matter that cannot be severed from its context," and are thus exempt from disclosure. *Grand Central Partnership, Inc. v. Cuomo,* 166 F.3d 473, 483 (2d Cir.1999); *see also* Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. 1, at 75 (Dillon states: "I felt comfortable with the initial allegations dealing with the legal practices of handling, transportation, and disposal.")

Moreover, this Court notes that the identity and position of the authors and recipients of these documents support the conclusion that these documents were deliberative. *See Ethyl Corp.,* 25 F.3d at 1249 ("One relevant factor to be considered in determining whether the deliberative process privilege applies to a record is the identity and position of the author and any recipients of the document, along with the place of those persons within the decisional hierarchy"). For example, in Bates Label No. EPS P3 185–201, the author of the document is Mary Coe, EPA Region III Attorney, Br. Chief, Waste and Chemicals, and the recipient is Cheryl Jamieson, EPA Region III Attorney. Bates Label No. EPS P3 185–201 also demonstrates that the EPA has described the document with reasonable specificity as "Attorney comments on draft Memorandum of Law in

Support of Complainant's Motion for a Partial Accelerated Decision (17 pages)."

### b. *Attorney Work–Product Privilege*

The attorney work-product privilege operates to protect documents "prepared in anticipation of litigation or for trial." Fed. R.Civ.P. 26(b)(3). It is specifically intended to protect "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

The EPA asserts the attorney work-product privilege with respect to the following documents identified in response to the plaintiff's Region III request: Bates Label Nos. EPS P3 1–5, 8, 15–21, 37–39, 41–42, 50–51, 62–65, 180–427, 469–549, and 552–602. The EPA claims that the privilege is applicable because these documents "consist of attorney preparation and thought processes with regard to an administrative litigation proceeding against EPS initiated by EPA, Region 3, on June 28, 2001 ..." Defs.' Mot. Summ. J. at 18.

This Court finds that the withheld documents and the withheld portions of the documents were prepared during the course of an actual administrative proceeding against EPS by the EPA. The EPA commenced an administrative enforcement proceeding against EPS on June 28, 2001 and the withheld documents were created after that date. The administrative proceeding against the EPS was to enforce the Toxic Substances Control Act ("TSCA") and the documents withheld were prepared by an attorney in contemplation of that proceeding and in anticipation of foreseeable litigation. *See, e.g.,* Bates Label No. EPS P3 63–65 ("Document entitled 'In the Matter of Environmental Protection Services—TSCA 03–2001–0331.' This document provides an enforcement history of the case (3 pages)").

### c. *Attorney–Client Privilege*

The attorney-client privilege protects both the communications of a client to an attorney and also the opinion and advice given by the attorney to the client based on confidential communication given by the client. *Schlefer v. United States,* 702 F.2d 233, 245 (D.C.Cir.1983).

With respect to the Region III request, the EPA asserts that the attorney-client privilege attaches to the documents identified with the Bates Label Nos. EPS P3 1–5, 9–13, 18–19, 22–31, 37–39c, 41–44, 50–62, 68–74, 448–454, 460–468, and 559–602. The EPA claims that those documents contain or summarize discussions between EPA employees and the Office of Regional Counsel. William C. Early explains in his declaration that "[s]uch documents contain the candid opinions, analyses, and recommendations of Agency personnel regarding the legal defensibility of alternative courses of action under consideration by the EPA." Defs.' Mot. Summ. J., Ex. A, ¶ 9B (Declaration of William C. Early).

After considering both the *Vaughn* indices and the declarations, this Court agrees that the attorney-client privilege attaches to these documents. This Court is satisfied that the communications described are instances in which the EPA employees sought advice from or consulted with EPA attorneys. The *Vaughn* indices for each document claimed by the EPA as attorney-client privileged identify the attorney or attorneys involved in the communication and articulate with reasonable specificity the nature of the confidential communication. The *Vaughn* indices also indicate that these documents contain the opinions, analyses, and recommendations of Agency attorneys regarding the legal defensibility of alternative courses of actions under consideration by the EPA. In addition, the EPA has stated that these documents are not released to the general

public, and are accessible only to "those who have review, approval, or advice functions pertaining to them." Defs.' Mot. Summ. J. at 19. Thus, this Court finds that the EPA has met its burden of showing that attorney-client privilege applies to these documents.

### 3. *Personnel and Medical Files Affecting Personal Privacy, 5 U.S.C. § 552(b)(6)*

██ Exemption 6 relates to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has ruled that this exemption applies to all detailed government records on an individual which can be linked to that individual. *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (quoting H.R.Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966), U.S.Code Cong. & Admin. News pp. 2418, 2428). "When disclosure of information which applies to a specific individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Washington Post Co.*, 456 U.S. at 602, 102 S.Ct. 1957. This involves " 'a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.' " *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 9 (1965)).

The EPA asserts that this exemption is applicable to the following documents: Bates Label Nos. CID 4–5, 6–8, and 11–49, and Bates Label Nos. EPS P4, CID R2 01–56. The EPA claims that it provided the plaintiff with versions of these documents containing redactions of the names of interview subjects and the information

that they provided. The EPA asserts that the redacted names and information "do not directly reveal information concerning the agency's performance of its statutory duties." Defs.' Mot. for Summ. J. at 21. The EPA contends that the interview subjects' substantial interest in privacy outweighs the public interest in their names and information.

██ This Court agrees that the personnel and medical files privilege applies to these redactions. The balance of the interests weighs in favor of the interview subjects rather than the public. The personal information about these individuals "would not shed any light on the conduct of any Government agency or official," and, consequently, disclosure is not warranted. *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

### 4. *Information Compiled for Law Enforcement Purposes, 5 U.S.C. § 522(b)(7)(A)*

██ Records or information compiled for law enforcement purposes which "could reasonably be expected to interfere with enforcement proceedings" are exempt from disclosure. 5 U.S.C. § 552(b)(7)(A). Exemption 7 applies not only to investigatory materials relating to the enforcement of criminal law, but also to investigatory materials relating to the enforcement of civil laws such as regulations promulgated pursuant to statutes. *Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir.1979). In order for Exemption 7 to apply, the government agency has the burden of proving two elements. First, the government agency must show that a law enforcement proceeding is pending or prospective. *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir.1995), *cert. denied*, 516 U.S. 975, 116 S.Ct. 477,

133 L.Ed.2d 405 (1995). Second, the government agency must show that the articulable harm is likely to result if the record or information requested is disclosed. *Id.; see also North v. Walsh,* 881 F.2d 1088, 1098 (D.C.Cir.1989). An agency, however, is not required to establish on a document-by-document basis the interference that would result from the disclosure of each document. *See Robbins Tire & Rubber Co.,* 437 U.S. at 232, 98 S.Ct. 2311 (1978). Rather, the agency may take a generic approach based on categorical types of records involved. *Id.* at 236, 98 S.Ct. 2311.

The EPA asserts that Exemption 7(A) is applicable to the following documents and portions of documents located as a result of the plaintiff's Region III request: Bates Label Nos. EPS P3 1–5, 8–13, 15–31, 34, 37–39c, 41–44, 51–61, 66–74, 180–341, 346–427, 443–446, and 448–454. The EPA claims that this information "relates to an ongoing enforcement action against EPS which has not yet been concluded." Defs.' Mot. Summ. J. at 23. The EPA further asserts that "[r]elease of this information would prematurely and/or inappropriately reveal the government's case against EPS in court, its evidence and strategies, and the nature, scope, direction and focus of its investigations." *Id.*

▆ In this case, the documents withheld by the EPA pursuant to Exemption 7(A) were compiled for law enforcement purposes; more specifically, in order to enforce the TSCA against the plaintiff. The disclosure of these withheld documents would prematurely reveal the EPA's case against the plaintiff in the administrative proceeding that is currently pending. Thus, the EPA has adequately shown that disclosure of these withheld documents would likely cause an articulable harm upon the EPA.

### 5. Information Compiled for Law Enforcement Purposes Affecting Personal Privacy, 5 U.S.C. § 522(b)(7)(C)

Under Exemption 7(C), records or information compiled for law enforcement purposes which "could reasonably be expected to constitute an unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) allows government agencies to withhold records or information compiled for law enforcement purposes, the production of which could reasonably constitute an unwarranted invasion of privacy. *See* 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires the balancing of the public interest in disclosure against the private interest at stake. *United States Dep't of Justice v. Reporters Committee for Freedom of Press,* 489 U.S. 749, 761, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1988).

The EPA argues that Exemption 7(C) is implicated with respect to the following documents located in response to the plaintiff's Region II request: Bates Label Nos. CID 1–51 in the EPA–HQ–CID *Vaughn* index, and Bates Label Nos. CID R2 01–56 in the EPA Region II CID *Vaughn* index. The EPA asserts that these documents meet the threshold requirement for Exemption 7(C) because the information they contain was compiled in furtherance of the administrative enforcement proceedings against the plaintiff. The EPA further asserts that the balancing test weighs in favor of withholding this information because the "the substantial privacy interest of the parties whose homes have been tested by the Agency outweighs the public interest in disclosure of such residential information." Defs.' Mot. Summ. J. at 25.

▆ This Court agrees that these documents contain information compiled for law enforcement purposes, as they relate to the investigation conducted in further-

ance of an administrative proceeding against EPS. This Court further finds that the substantial privacy interest of third parties outweighs the public interest in disclosure of these documents. The investigative summaries and handwritten notes contain private information about individuals who were interviewed during the EPA's investigation. These individuals' privacy interest outweighs the tenuous regard that the public might have for these documents. In *National Archives & Records Administration v. Favish*, 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), the Supreme Court held:

> Law enforcement documents obtained by Government investigators often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance. There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course. In this class of cases where the subject of the documents "is a private citizen," "the privacy interest ... is at its apex."

*Id.* at 166, 124 S.Ct. 1570 (quoting *Reporters Committee*, 489 U.S. at 780, 109 S.Ct. 1468). While this case involves an administrative proceeding rather than a criminal prosecution, the privacy interest of the witnesses remains the same. Moreover, the information redacted from these documents is only tangentially related to the

activities of the EPA. Consequently, this Court finds that the EPA's assertion of Exemption 7(C) is appropriate.

6. *Confidential Source, 5 U.S.C. § 522(b)(7)(D)*

 Title 5, United States Code, Section 552(b)(7)(D) ("Exemption 7(D)") provides in relevant part that records or information compiled for law enforcement purposes which

> could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information filed by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by confidential source ... [are exempt].

The first clause of 5 U.S.C. § 552(b)(7)(D) protects the "identity of the confidential source."[2] This includes information that would disclose the source's identity. *Pollard v. FBI*, 705 F.2d 1151, 1155 (9th Cir.1983). "Confidential" as used in Exemption 7(D) refers to a degree of confidentiality less than secrecy. *United States Dep't of Justice v. Landano*, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). A source is deemed confidential if the source furnished information with the understanding that the government agency

**2.** The second clause of 5 U.S.C. § 552(b)(7)(D) is not applicable to this action because it provides protection from disclosure of all information furnished by the confidential source "in the course of a criminal [or national security] investigation." *See Neely v. FBI*, 208 F.3d 461, 466 (4th Cir.2000). The EPA has quoted *Radowich v. United States Attorney*, 658 F.2d 957, 959 (4th Cir.1981), in its argument that Exemption 7(D) exempts from disclosure all information furnished by a

confidential source. *See* Defs.' Mem. Supp. Summ. J. at 25. However, *Radowich* involved information obtained from a confidential source in a criminal investigation. *Id.* Thus, the *Radowich* court held that "the protection from compelled disclosure given by the *second clause* of that exemption [Exemption 7(D)] extends to all information furnished by the confidential source in the course of a *criminal investigation.*" *Id.* at 964 (emphasis added).

would not divulge the information except to the extent necessary for law enforcement purposes. *Id.*

The EPA argues that Exemption 7(D) is applicable to the following documents: (1) With respect to the plaintiff's Region III request, Bates Label No. EPS P3 46; (2) With respect to the plaintiff's Region II request, Bates Label Nos. CID 4–7, 11–27, 38–49 and Bates Label Nos. CID R2 01–56. The EPA claims that release of these documents would reveal the identity of confidential sources who provided the EPA with information under "an implied assurance of confidentiality." Defs.' Mot. Summ. J. at 26.

The plaintiff argues that Exemption 7(D) is inapplicable because "no confidentiality was given or requested by any individual interviewed by Mr. Dillon." Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 4. The plaintiff also contends that Mr. Keith Reed of EPS provided to Mr. Dillon the identities of all individuals interviewed. Moreover, the plaintiff asserts that Mr. Dillon testified as to the people he interviewed during his investigation at the administrative proceeding. Consequently, the plaintiff contends that this information is available to the public and can be accessed via the Internet.

In its reply, the EPA argues that it was the plaintiff who disclosed the names of persons it believes are EPA sources—not the EPA itself. The EPA asserts that "[i]f the names of the alleged sources are in the public domain, it is a result of Mr. Reed's speculations, not EPA's disclosures." Defs.' Reply at 4.

■ "Exemption 7(D) protects the identity of a confidential source in civil as well as criminal law enforcement situations, and the protection extends to situations where the danger of retaliation encompasses more than the source's physical safety." *Ortiz v. United States Dep't of Health and Human Services,* 70 F.3d 729,

733 (2d Cir.1995). The United States Court of Appeals for the Fourth Circuit has held that "a source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Neely v. FBI,* 208 F.3d 461, 466 (4th Cir.2000) (quoting S.Rep. No. 93–1200, at 13, U.S.Code Cong. & Admin. News pp. 6285, 6291). "Whether the proof shows an express or implied assurance of confidentiality is ordinarily a question of fact." *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1137 (4th Cir.1977).

■ This Court first notes that there is no evidence that any EPA employee provided the witnesses with an express assurance of confidentiality. Thus, this Court must determine whether the circumstances support an implicit guarantee. In determining whether an implied assurance of confidentiality exists, courts should first determine "whether ... in light of the information and surrounding circumstances, the communication in all likelihood would not have been made if confidentiality had not been assured." *Brant Constr. Co. v. U.S. EPA,* 778 F.2d 1258, 1264 (4th Cir.1985). A court should then examine the record to evaluate "whether the actions of the agency are inconsistent with an implicit assurance of confidentiality." *Id.*

■ After considering the record, this Court finds that confidentiality was implied under the circumstances. The EPA asked the witnesses to give detailed factual information regarding possible illegal activity by the plaintiff and by G & S. Based on the nature of the allegations against both companies, this Court is satisfied that the witnesses would not have been forthright with the EPA had they not thought that their comments were being held in

strict confidence. *See Brant Constr.*, 778 F.2d at 1264. Moreover, nothing in the record indicates that the EPA did not treat these statements as confidential during the course of the investigation. Furthermore, the EPA has requested that the identities of these individuals remain confidential throughout the course of the administrative and civil proceedings. *See, e.g.*, Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. 1, at 46–49. Consequently, this Court finds that the EPA properly asserted Exemption 7(D).

### C. *Waiver of Privileges*

The plaintiff asserts in its response that the EPA has waived the exemptions discussed above by allowing G & S access to the documents at issue. The plaintiff specifically avers that G & S made a FOIA request on July 18, 2003 for "all of the records in the agency's files pertaining to communications by or between EPA and EPS, that also refer, relate or otherwise concern G & S, or any of its principals or employees ..." Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 10 (Excerpt of letter from G & S Technologies to EPA). The plaintiff asserts that the EPA permitted G & S to access and copy 1,000 pages of documents in response to this request at Region III's Office of Regional Counsel.

■ In response, the EPA asserts that the plaintiff's argument lacks merit because G & S agreed to limit its FOIA request to the documents contained in Region III's Regional Hearing Clerk's pleading files for *In the Matter of Environmental Protection Services, Inc.*, Docket No. TSCA–03–2001–0331. In support, the EPA provides the declaration of Jan Nation, Senior Paralegal Specialist in the Office of Regional Counsel, Region III. Ms. Nation states in her declaration:

> In an attempt to narrow this broad request, I contacted G & S by telephone on July 24, 2003. They agreed to limit

the request to documents contained in the public docket of the Regional Hearing Officer for *In the Matter of Environmental Protection Services, Inc....*

> The public docket contains pleadings, transcripts, and other documents that have been filed with the court ...

Defs.' Reply, Ex. B, ¶¶ 3–4 (Declaration of Jan Nation). The EPA asserts that the plaintiff has failed to demonstrate that the documents withheld in this case are *the same* as those made available to G & S, or that G & S was provided with any document which has not been provided to or is not otherwise available to the plaintiff. Further, the EPA asserts that the documents provided to G & S are, in fact, entirely different.

> [A]lthough an agency bears the burden of proving that a FOIA exemption applies to a given document, a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld. FOIA plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain ...

*Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C.Cir.1993) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1129 (D.C.Cir.1983)). The plaintiff in this case has failed to make such a showing. The plaintiff has not cited with specificity any document that was disclosed to G & S yet withheld pursuant to its own FOIA request. The plaintiff's conclusory allegations, standing alone, are insufficient to prove prior disclosure. Consequently, this argument is without merit.

### D. *Reasonable Segregation*

■ Pursuant to FOIA, "any reasonably segregable portion of a record shall

be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). A district court has "an affirmative duty to consider the segregability issue *sua sponte.*" *Trans–Pacific Policing Agreement v. U.S. Customs Service,* 177 F.3d 1022, 1028 (D.C.Cir.1999).

The EPA contends that it "specifically analyzed each document it contemplated withholding or redacting for possible segregation of purely factual material." Defs.' Mot. Summ. J. at 27. It claims that its declarations regarding segregation are sufficient under *Trans–Pacific.*

After reviewing the record, this Court is satisfied that the EPA has properly analyzed the withheld documents and segregated material that is appropriately disclosed. Thus, this Court finds that no genuine issue of material fact remains with respect to segregation.

### V. *Conclusion*

Because the defendants have set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to all of the claims in this case, this Court, pursuant to Rule 56(e), hereby GRANTS the defendants' motion for summary judgment. This action is DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.